359 So.2d 118 (1978)
Howard N. CRAWFORD, Jr.
v.
O. H. DESHOTELS, Jr., et al.
No. 61159.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied June 15, 1978.
*119 Frank L. Maraist, Baton Rouge, O. H. Deshotels, III, Kaplan, for defendants-applicants.
Silas B. Cooper, Jr., Cooper & Sonnier, Abbeville, for plaintiff-respondent.
CALOGERO, Justice.
We granted writs in this case to review a decision of the Court of Appeal favorable to plaintiff, an independent landman.[1]
The case concerns the validity of a contract
whereby plaintiff acquired an undivided one-half interest in defendant McDaniel's interest (one-sixth) in thirty-five acres of land, and the provision in that same instrument giving the consequent co-owners (plaintiff Crawford and defendant McDaniels) each a right of first refusal should either thereafter desire to sell their respective interests. Involved also in the litigation is defendant Deshotels, who purchased McDaniel's undivided half-interest, notwithstanding McDaniel's failure to first offer the property to plaintiff Crawford at the same price.
Because we affirm the judgment of the Court of Appeal we will borrow liberally from its opinion which ably sets forth the facts and correctly resolves the legal issues:
The plaintiff, Howard N. Crawford, Jr., filed this suit to annul a sale by the defendant, Mrs. Frankie Boutte McDaniel, to the defendant, O. H. Deshotels, Jr., conveying all of vendor's interest in 35 acres of land. Plaintiff contends that in a prior sale by Mrs. McDaniel to plaintiff of an undivided 1/12th interest in the land, Mrs. McDaniel granted plaintiff an option to purchase her remaining 1/12th interest at the bona fide price offered by any third party. It is plaintiff's contention that the later sale by Mrs. McDaniel to *120 Deshotels was in violation of the option agreement. Plaintiff prayed for the annulment of the sale from Mrs. McDaniel to Deshotels and for specific performance of the option by ordering Mrs. McDaniel to sell to plaintiff. From a judgment granting plaintiff the relief prayed for, the defendants have appealed.
The issues are: (1) Was the sale from Mrs. McDaniel to plaintiff and the option contained therein void on the basis that the consideration from Crawford, a non-lawyer, was an agreement to practice law and furnish legal services in violation of state statutes? (2) Was the option agreement between Mrs. McDaniel and Crawford invalid for want of a limited time within which to exercise the option?
* * * * * *
The general facts are that in about 1961 the plaintiff, an independent land man, was researching the title to the 35-acre tract of land formerly owned by Whitney Boutte in Vermilion Parish. Crawford discovered that the defendant, Mrs. Frankie Boutte McDaniel, was an adopted daughter of Whitney Boutte, who died leaving a will bequeathing his entire estate to other persons, thus, in effect, disinheriting his adopted daughter. Under these facts, Mrs. McDaniel was entitled to a legitime of one-third of Whitney Boutte's one-half interest in the property, or a total of a one-sixth interest in the 35 acres.
Mr. Crawford located Mrs. McDaniel in California. He began to correspond with her regarding an agreement to undertake to correct her title to an interest in the property. [In 1961 Mrs. McDaniel signed an oil lease in favor of Mr. Crawford.] On May 31,1966, Mrs. McDaniel executed a contract whereby she agreed to convey to Crawford one-half of her interest in the 35 acres in consideration of certain services to be performed by him and described in the instrument as follows:
"That grantor enters into this agreement to grant unto grantee the said interest as a consideration in return for the services of and expense to grantee in undertaking the necessary work and expense in perfecting the title, of whatever undivided interest grantor may have legal claim to, into grantor and causing the said title to grantor interest to be properly reflected in the Conveyance Records of the Clerk of Court of the Parish of Vermilion."
Thereafter, in June of 1967, Crawford obtained quitclaim deeds from several parties conveying an undivided one-sixth interest in the property to Mrs. McDaniel. It was not necessary for Mr. Crawford to employ an attorney or to file any proceedings in court to perfect Mrs. McDaniel's title.
On July 16, 1967, in compliance with the contract of employment of Mr. Crawford, Mrs. McDaniel conveyed to Crawford one-half of her undivided one-sixth interest in the property. This conveyance contained the option agreement in question, which reads as follows:
"IT IS FURTHER UNDERSTOOD, that if ever a bona fide offer is made, and should either Frankie Boutte McDaniel or H. N. Crawford, Jr., desire to sell in whole, part or portion the herein described interest owned by each, the party desiring to sell shall be and is herein obligated to offer to the other party the first chance to buy same at the bona fide offer, such notice to be given to the hereinabove address of either by Registered Mail, and an answer be given the same within thirty days from date notice is received, or it shall be deemed that the option to purchase at the bona fide offer is rejected."
Beginning in 1968, Mr. Crawford contacted Mrs. McDaniel several times suggesting that he might buy her interest in the property. Mrs. McDaniel was interested in selling and they corresponded during 1972 and 1973 regarding a price.
* * * * * *
Mrs. McDaniel gave no written notice by Registered Mail to Crawford of any bona fide offer by Mr. Deshotels or any other party. Nevertheless, on April 26, *121 1974, Mrs. McDaniel conveyed all of her right, title or interest in the 35 acres to O. H. Deshotels, Jr. for a stated consideration of $3500 cash.
On February 25, 1976, Crawford filed the present suit to annul the sale from McDaniel to Deshotels and to seek performance of the option. Plaintiff later deposited the sum of $3500 in the Registry of the Court to reimburse Deshotels for the price he paid to Mrs. McDaniel. 351 So.2d 295, 296-97.
With respect to the first issue in the case, the alleged illegal consideration for the sale from Mrs. McDaniel to Crawford, relator in brief vigorously contends that the consideration for the sale was the performance by Crawford of services which constitute the practice of law in violation of R.S. 37:213. That statute prohibits persons not licensed to practice law in Louisiana among other things, from practicing law, furnishing attorneys or counsel, rendering legal service and rendering or furnishing legal services or advice.
Our assessment of the record in this case and appreciation of the applicable law coincide with that of the Court of Appeal which relied heavily upon a recent decision of this Court, Placid Oil Company v. Taylor, 306 So.2d 664 (La.1975). We agree with the Court of Appeal which resolved this legal issue in the following manner:
As shown by the above quotation from the May 31, 1966 employment contract, Mr. Crawford agreed to undertake "the necessary work and expense in perfecting the title, of whatever undivided interest grantor may have legal title to, into grantor and causing the said title to grantor's interest to be properly reflected in the Conveyance Records of the Parish of Vermilion." The evidence shows that pursuant to this agreement Crawford obtained quitclaim deeds, which he personally prepared, conveying to Mrs. McDaniel an undivided one-sixth interest in the property. It was not necessary for Mr. Crawford to employ an attorney or to file any proceedings in court.
A very similar issue was presented in the recent case of Placid Oil Company v. Taylor, 306 So.2d 664 (La.S.Ct.1975) where a landman, a non-lawyer, agreed to furnish services to remove clouds from the titles of landowners in consideration of an interest in the property. The court found that regardless of whether the services to be performed by the landman under the contract constituted the practice of law, the evidence did not show that the services actually performed were prohibited legal services. The court stated:
"Nor can we say, for instance, that services performed by removing clouds from titles, such as locating heirs or having adverse claimants sign quitclaims prepared by lawyers, amount by themselves to the practice of law, so as to exclude non-lawyers from the useful functions historically performed by landmen."
In its decision in Placid, the Supreme Court cited with approval the case of Strange v. Robinson, La.App., 189 So. 338 (1939) which involved facts very similar to the present case. The court in Robinson held that the services performed by the landman did not constitute the prohibited practice of law. 351 So.2d at 297-98.
Under these authorities, the services performed by Crawford in the present case clearly did not constitute the prohibited practice of law. 351 So.2d at 297-98.
The conclusion of the Court of Appeal as well as our own is an affirmance of the trial judge who held: "This Court finds that Mr. Crawford did nothing more than to perform the services historically rendered by landman."
Relator's second contention is that, even if the agreement between McDaniel and Crawford is founded upon a valid consideration, the portion of that agreement here at issue, an option, is invalid on other grounds.
The clause of the contract or quitclaim is fully related hereinabove. Pertinently it provides:

*122 "if ever a bona fide offer is made and should [McDaniel] desiring to sell . . . [she] is herein obligated to offer to [Crawford] the first chance to buy same at the bona fide offer."
Relator contends that the agreement cannot be enforced because it is an option in perpetuity and contrary to the public policy of Louisiana as expressed in Article 2462 of the Civil Code. That article provides:
A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.
One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party. [emphasis provided]
This Court has applied Civil Code Article 2462, when pertinent, and held void an option for an indefinite time. Becker and Assoc., Inc. v. Lou-Ark Equipment Rental Co., Inc., 331 So.2d 474 (La.1976); Bristo v. Christine Oil & Gas Co., 139 La. 312, 71 So. 521 (1916); Clark v. Dixon, 254 So. 2d 482 (La.App. 3d Cir. 1971).
The article and the jurisprudence on which relator relies, however, are not applicable here, for there is not here following "the purchase of such option" or in this case entry of the contract a continuing right or option to accept (or reject) an extant offer or promise to sell as contemplated by Article 2462. Rather there is here what is more commonly described as a right of first refusal, or as the contract says, a right to be afforded a "first chance to buy" at a price equal to any bona fide offer which McDaniel should receive and be interested in accepting. Thus, the stipulated time requirement of Article 2462 is not applicable.
The only case in the jurisprudence directly on point is Price v. Town of Ruston, 171 La. 985, 132 So. 653 (La.1931) wherein this Court rejected a contention similar to relators' with the following language:
"There is no merit in the appellant's argument that the option was null for want of a stipulation limiting the time within which it might be exercised. The stipulation limiting the time was that the option would be available whenever the Elks' Lodge might desire to sell the property, meaning whenever it might become necessary for Mrs. Price or her heirs or assigns to prevent the title to the third story of the Price building from passing to someone else." 171 La. at 993, 132 So.2d at 656.
For the foregoing reasons there is no merit to relator's contention that the pertinent clause of the contract is null and void in violation of Civil Code Article 2462.
Relying on Civil Code Article 2291, relator Deshotels asserts that Crawford should be estopped from asserting the validity of the option clause in the McDaniel-Crawford contract because of Crawford's plea of res judicata to an earlier Deshotels suit. Deshotels asserts that Crawford's plea was an admission of the validity of the McDaniel-Deshotels sale, and, impliedly, a confession that the option clause in the McDaniel-Crawford contract was invalid.
A judicial confession under Article 2291 is a party's explicit admission of an adverse factual element; it has the effect of waiving evidence as to the subject of the admission. Jackson v. Gulf Insurance Company, 250 La. 819, 199 So.2d 886 (1967); Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122 (1913). Moreover, a judicial admission does not estop the confessor from denying the correctness of his earlier admission unless the party claiming the benefit from the confession has relied on that admission to his prejudice. Johnson v. Kennedy, 235 La. 212, 103 So.2d 93 (1958); Succession of Turner, 235 La. 206, *123 103 So.2d 91 (1958); 19 La.L.Rev. 433 (1959).
Even assuming that Deshotels is correct in his assertion that Crawford, by virtue of certain pleadings, has implicitly acknowledged the invalidity of the contract between Mrs. McDaniels and himself, (an assumption that we do not concede is correct), that acknowledgment was simply not explicit enough to constitute a judicial confession under Article 2291. Moreover, Deshotels has neither alleged nor shown any reliance or detrimental change of position based on the alleged confession. Consequently, Deshotels' argument that Crawford has made a judicial confession is meritless.

Decree
For the reasons assigned, the judgment of the Court of Appeal is affirmed, all costs to be assessed against plaintiff.
AFFIRMED.
SUMMERS, J., dissents.
DIXON, J., concurs with reasons.
DENNIS, J., dissents with reasons.
DIXON, Justice (concurring).
I respectfully concur.
C.C. 2462 clearly contemplates that an option will be for only a "stipulated time," which I take to mean a time certain a day on the calendar or a day on which it is contemplated that an event will occur which is not within the control of the person granting the option.
However, it is not necessary to nullify the option in the absence of such a "stipulated time" if the option is treated in the same way a contract of sale of minerals is treated. That is, if the option is not exercised within a ten year period, the obligation is extinguished for nonuse by liberative prescription.
DENNIS, Justice, dissenting.
I respectfully dissent.
By characterizing the defendant's conduct as "landman's activities" and the contract as a "first refusal" the courts cannot alter the actualities. The activities amounted to an unauthorized practice of law and the contract was an invalid option.
NOTES
[1] The term landman, as distinguished from an independent landman like plaintiff, is defined as "An employee of an oil company whose primary duties are the management of the company's relations with its landowners. Such duties include the securing of oil and gas leases, lease amendments, pooling and unitization agreements and instruments necessary for curing title defects from landowners." Howard R. Williams, Oil and Gas Terms (4th ed. 1976).